## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

RAYMOND WILLIAMS,

      Petitioner,

v.                                          Case No. 3:18-cv-985-TJC-JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I.   Status

Petitioner, Raymond Williams, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. 1. He is proceeding on an Amended Petition. Doc. 2. Petitioner challenges a state court (Duval County, Florida) judgment of conviction for carjacking and battery for which he is serving a thirty-year term of incarceration. Id. Respondents filed a Response. See Doc. 10 (Resp.).[1] Petitioner replied. See Doc. 14. This case is ripe for review.

---

[1] Attached to the Response are several exhibits. The Court cites the exhibits as "Resp. Ex."

## II.   <u>Governing Legal Principles</u>

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or

2

> argued to the state supreme court or obvious in the
> record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for
> evaluating state court rulings" and "demands that
> state-court decisions be given the benefit of the doubt."
> Renico v. Lett, 559 U.S. 766, 773 (2010) (internal
> quotation marks omitted). "A state court's
> determination that a claim lacks merit precludes
> federal habeas relief so long as fairminded jurists could
> disagree on the correctness of the state court's
> decision." Harrington v. Richter, 562 U.S. 86, 101
> (2011) (internal quotation marks omitted). "It bears
> repeating that even a strong case for relief does not
> mean the state court's contrary conclusion was
> unreasonable." Id. [at 102] (citing Lockyer v. Andrade,
> 538 U.S. 63, 75 (2003)). The Supreme Court has
> repeatedly instructed lower federal courts that an
> unreasonable application of law requires more than
> mere error or even clear error. See, e.g., Mitchell v.
> Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at
> 75 ("The gloss of clear error fails to give proper
> deference to state courts by conflating error (even clear

3

> error) with unreasonableness."); <u>Williams v. Taylor</u>,
> 529 U.S. 362, 410 (2000) ("[A]n unreasonable
> application of federal law is different from an incorrect
> application of federal law.").

<u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal

citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254

habeas action in federal court, a petitioner must exhaust all state court

remedies available for challenging his state conviction. <u>See</u> 28 U.S.C. §

2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]"

every issue raised in his federal petition to the state's highest court, either on

direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351

(1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners

must give the state courts one full opportunity to resolve any constitutional

issues by invoking one complete round of the State's established appellate

review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope</u>

<u>v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the

state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state
> prisoner must exhaust available state remedies, 28
> U.S.C. § 2254(b)(1), thereby giving the State the
> """opportunity to pass upon and correct" alleged

4

>violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

>Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[2] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[3] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the

---

[2] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[3] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Even though a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

---

[4] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

Without a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also</u> <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III. <u>Analysis</u>

### A. Ground One

Petitioner argues that trial counsel was ineffective for failing to request two jury instructions supporting Petitioner's defense theories. Doc. 2 at 5. First,

9

Petitioner contends that counsel should have requested a special jury instruction for an afterthought defense as to the carjacking charge and the standard jury instruction for self-defense for the battery charge. Id. at 6. According to Petitioner, counsel argued these defenses during trial and presented evidence to support the instructions. Id. As to the afterthought defense, Petitioner contends that the evidence shows Petitioner did not intend to drive away in the victim's vehicle, but rather Petitioner was trying to steal the victim's wallet and ultimately took the vehicle as a mere afterthought unrelated to the physical altercation between Petitioner and the victim. Likewise, Petitioner contends that the evidence demonstrated Petitioner acted in self-defense when he hit the victim, because the victim was the initial aggressor and Petitioner tried to protect himself by hitting the victim and driving away in the victim's car. He states that counsel's failure to request these instructions undermines the jury's guilty verdicts and violated his rights under the Sixth and Fourteenth Amendments. Id. at 15.

Petitioner raised these claims in his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief. Resp. Ex. 10 at 4-10. The trial court denied the claims, finding:

> In the instant Grounds, Defendant maintains counsel was ineffective for failing to request jury instructions for an "afterthought defense" and self-defense.

> Defendant contested the lack of both the afterthought defense and self-defense instruction on direct appeal.[] Notably, portions of the instant Motion are copied verbatim from Defendant's initial brief on direct appeal. The First District Court of Appeal affirmed Defendant's convictions and sentences and found no error in the lack of either instruction. As such, Defendant may not bring this claim again through a Rule 3.850 Motion by couching it in terms of ineffective assistance of counsel. Raulerson v. State, 420 So. 2d 567, 569 (Fla. 1982); see Arbelaez v. State, 775 So. 2d 909, 915 (Fla. 2000) (stating, "Arbelaez may not relitigate procedurally barred claims by couching them in terms of ineffective assistance of counsel."). Accordingly, Defendant is not entitled to relief.

Resp. Ex. 10 at 23. Petitioner appealed and the First District Court of Appeal per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. 13.

Respondents erroneously argue that the Court should overlook the state court's adjudication here because it was "improper" and the "procedural bar used to deny Petitioner's ineffective assistance of counsel claim concerning the unrequested jury instructions is not regularly followed." Resp. at 6 n.2, 12. Respondents also assert these claims lack merit. Although the Court ultimately agrees with Respondents' latter argument, federal review of a habeas petitioner's claim is barred if the last state court to examine the claim states explicitly that the claim is barred because the petitioner failed to follow state procedural rules, and that procedural bar provides an adequate and independent state ground for denying relief.

11

> A state court's procedural ruling constitutes an independent and adequate ground if: (1) the last state court to render a judgment in the case clearly and expressly states that it is relying on state procedural rules to resolve the federal claim without reaching the merits of the claim; (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law; and (3) the state procedural rule is adequate, meaning it was not applied arbitrarily or in an unprecedented way.

Smith v. Warden, Macon State Prison, 803 F. App'x 272, 279 (11th Cir. 2020); see also Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts.").

Here, during his direct appeal, Petitioner argued that the trial court's failure to sua sponte instruct the jury on the defenses of afterthought and self-defense amounted to fundamental error. Resp. Ex. 4. The state filed an answer brief arguing that while trial counsel did not request these instructions or object to their omission, exclusion of these instructions did not amount to fundamental error and addressed the omission of these instructions on the merits. Resp. Ex. 5. As such, when the First DCA affirmed Petitioner's judgment and sentences, it is fair to assume that it adjudicated the merits of Petitioner's claims and found that exclusion of these defense instructions did not result in an unfair trial.

Later, on collateral review, the state court rejected the ineffective assistance of counsel claims at issue now because the underlying allegations for which Petitioner's Strickland claims were based were previously found to lack merit on direct appeal. The state court's ruling was not mixed with the merits of the claim, and the cases that the postconviction court cited to support its ruling are identical to the procedural facts of Petitioner's case. Notably, those courts found that a claim of ineffective assistance of counsel was procedurally barred because the primary issue supporting the claim was raised on direct appeal as a claim of trial court error and denied on the merits. See Arbelaez, 775 So. 2d at 919 (holding claim raised and rejected on direct appeal was procedurally barred on collateral review); Raulerson, 420 So. 2d at 569 (finding postconviction motion "cannot be used as a substitute for an appeal, and where matters raised therein could have been or were raised on direct appeal, denial of the motion is proper."). See also Dennis v. State, 109 So. 3d 680, 692 (Fla. 2012) (holding that claim of ineffective assistance of counsel for failing to object to testimony that improperly bolstered other witnesses' testimony was procedurally barred because it was raised on direct appeal as a claim of fundamental error and rejected on the merits).

This Court must "defer to the state court's findings regarding procedural default." Ferguson v. Sec'y, Dep't of Corr., 580 F.3d 1183, 1193 (11th Cir. 2009) (citing Zeigler v. Crosby, 345 F.3d 1300, 1304 (11th Cir. 2003)). When "[t]he

[state court] [has] 'clearly and expressly' stated that its judgment rested on a procedural bar, and the bar provides an adequate and independent state ground for denying relief," federal habeas relief is precluded. <u>Mills v. Singletary</u>, 161 F.3d 1273, 1284 (11th Cir. 1998). Because the state court found that Petitioner's ineffective assistance claims were barred on an adequate and independent state-law ground, this Ground is due to be denied as procedurally barred.[5]

In any event, even if Petitioner adequately presented this claim of ineffective assistance of counsel to the state court, rejection of this Ground is still appropriate because Petitioner shows neither deficient performance nor prejudice. Petitioner must show that omission of these instructions so infected the entire trial that his resulting convictions for carjacking and battery violated due process. <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977) (citing <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973)). The Court does not judge the allegedly erroneous instruction "in artificial isolation," but considers the instruction in the context of the trial record and the jury instructions as a whole. <u>Id.</u> at 152 n.10 (citing <u>Boyd v. United States</u>, 271 U.S. 104, 107 (1926)). Further, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a

---

[5] Although the Court finds that this Ground is procedurally barred, Respondents' erroneous argument that the claim should be addressed on the merits impeded adequate briefing on cause or prejudice to overcome the procedural bar, and thus the Court also addresses the claim de novo.

misstatement of the law." Id. at 154. Thus, when, as here, the alleged error is an omitted instruction, the burden on Petitioner is "especially heavy." Id.

Petitioner argues that his trial counsel should have requested an instruction on the afterthought defense for the carjacking charge. A carjacking occurs when the state establishes these three elements: "[1] the taking of a motor vehicle which may be the subject of larceny from the person or custody of another, [2] with intent to either permanently or temporarily deprive the person or the owner of the motor vehicle, [3] when in the course of the taking there is use of force, violence, assault, or putting in fear." § 812.133(1), Fla. Stat. The afterthought defense may be appropriate "[i]f the evidence shows that any force used by the defendant was done with the primary motive of committing some other offense and that the motive for the use of force was for a reason not associated with the taking of property." Concepcion v. State, 938 So. 2d 559, 560 (Fla. 5th DCA 2006) (quoting Kinsler v. State, 873 So. 2d 551 (Fla. 5th DCA 2004)). Taking a vehicle is not considered an "afterthought" if the use of force occurred "in the course of the taking," meaning "it occurs either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitutes a continuous series of acts or events." § 812.133(3)(b), Fla. Stat.

At trial, the victim, Haskell Moody, testified that on the day of the incident, he was on his way to a doctor's appointment when he stopped at a gas

station to buy potato chips. Id. at 281. Moody saw Petitioner and a woman standing outside the gas station. Id. at 282-83. Moody stated that after buying his chips, he got back into his truck and Petitioner approached the passenger side of his vehicle, stuck his arm through the top of the open window, unlocked the car door, and got into the car with Moody. Id. at 283. According to Moody, Petitioner asked Moody if he wanted drugs and when Moody declined, Petitioner asked Moody to give him and his girlfriend a ride as Petitioner opened the passenger door and the girlfriend got into the car. Id. at 284-85. At that point, Moody told Petitioner and his girlfriend they needed to get out of his truck, but Petitioner instead demanded that Moody hand over his wallet. Id. at 285. Moody stated that Petitioner then hit him in the head with his fist. Moody tried to fight back and ultimately exited the vehicle, so he could properly defend himself. Id. at 286. According to Moody, as he exited the vehicle, he tried to grab his car keys from the ignition, but Petitioner grabbed Moody's arm and reached for the keys, causing Moody to let go of the keys. Id. at 287-88. Moody testified that Petitioner then drove Moody's vehicle away from the scene. Id. at 289.

Moody stated that he was "petrified" during the attack, he and Petitioner were strangers, and he did not give Petitioner permission to get into the car or use the vehicle. Moody immediately called 911 following the altercation and the state played the 911 recording for the jury. Id. at 292-99. Police arrested Petitioner the next day, apprehending Petitioner as he was still driving Moody's

vehicle. Id. at 210-12. When police took custody of the car, they found Petitioner was using Moody's truck to haul his uncle's lawnmower, and Moody's personal items (i.e., his prescription medication) were still in the vehicle. Id. at 302-03.

During his initial police interrogation following his arrest, Petitioner advised Detective Clement G. Nieto that he and Moody got into a physical altercation in Moody's truck and after Moody got out of the truck, Petitioner drove the car away. Resp. Ex. 3 at 258. Petitioner told Detective Nieto that he knew it was wrong to take the truck, but explained that at the time of the taking, he was not "trying to deprive him of his vehicle" but that it just ended up that way. Id. at 259-60. Petitioner testified at trial that Moody initiated contact with Petitioner and asked Petitioner for help finding drugs, so Petitioner got in the car and they drove to a nearby trailer. Id. at 337-39. According to Petitioner, once at the trailer, they did not get out of the car and went back to the gas station to pick up his girlfriend. Id. at 339. He stated that when his girlfriend climbed into the truck, Moody got out of the car and walked over to the passenger side, opened the door, and tried to pull Petitioner out of the car while hitting him. Id. at 341-42. Petitioner asserted that he then hit Moody to defend himself, got out of the vehicle, and walked around to the driver's side and drove away in Moody's car. Id. at 343. According to Petitioner, he did not intend to take Moody's car. Id. at 344-45.

Despite Petitioner's testimony, the evidence shows that once Moody refused to hand Petitioner his wallet, Petitioner placed Moody in fear to gain access to the car he ultimately stole. Petitioner's taking of the truck was not an afterthought to Petitioner's attempt to rob Moody or Petitioner's use of force but was a continuous series of events.

Further, by arguing that the taking was merely an afterthought, Petitioner admits that his conduct satisfies the elements of grand theft, a lesser included offense for which the jury was instructed. Still, the jury unanimously found Petitioner guilty of carjacking. The Court cannot now find that the same jury would have ignored its own findings of fact, disregarded the trial court's instruction on the law, and found Petitioner guilty of such lesser included offense instead. Thus, Petitioner cannot show that but for trial counsel's alleged failure to request this jury instruction, the outcome of his trial would have been different.

Petitioner also argues that trial counsel should have requested the self-defense instruction for the battery charge. A battery occurs when a person "[a]ctually and intentionally touches or strikes another person against the will of the other; or [i]ntentionally causes bodily harm to another person." § 784.03, Fla. Stat. A person is justified in using non-deadly force "against another when and to the extent that the person reasonably believes that such conduct is

18

necessary to defend himself . . . against the other's imminent use of unlawful force." § 776.012, Fla. Stat.

Petitioner argues that because Moody hit Petitioner first, Petitioner's actions of fighting back were merely in self-defense. However, Petitioner's claim of self-defense is extremely weak. Moody testified that Petitioner got into his vehicle, refused to leave when asked, and demanded Moody hand over his wallet. Resp. Ex. 3 at 315. Moody explained that Petitioner tried to steal his personal items and threatened to kill Moody. When Moody demanded that Petitioner exit the car, Petitioner punched him in the face and head so violently that Moody had to exit the car to get away from Petitioner's blows. Moody stated he "tried to fight back" but stopped once he realized Petitioner was trying to rob him. Id. at 286-87. Moody also explained that following Petitioner's attack, Moody had multiple bruises and swollen lumps on his face and head. Detective Nieto testified that during his interrogation, Petitioner admitted that he hit the victim so many times that the victim got out of the truck to flee and Petitioner then drove away in the victim's vehicle. Id. at 277. Detective Nieto also testified that during the interrogation, he noticed both of Petitioner's hands "were swollen like he had been punching something, so it was consistent with what the victim" told police. Id. at 278. Further, while Petitioner argues he is not guilty of the battery charge because he hit Moody in self-defense, he overlooks

the evidence showing that while he was hitting Moody, Petitioner was contemporaneously committing the independent forcible felony of carjacking.

As already discussed, on direct appeal, the First DCA affirmed Petitioner's judgment and convictions and rejected Petitioner's claim that omission of the self-defense instruction amounted to fundamental error. In doing so the state court found there was no possibility that the outcome of Petitioner's trial would have been different had the self-defense instruction been included. See Martinez v. State, 981 So. 2d 449, 456 (Fla. 2008) (finding that despite trial court's erroneous instruction on self-defense exception, the error did not deprive defendant of a fair trial because "the likelihood that the jury would have found [p]etitioner not guilty based on self-defense was minimal at best."). Likewise, Petitioner cannot demonstrate that but for trial counsel's failure to request this instruction, the outcome of his trial would have been different. Ground One is due to be denied.

**B. Ground Two**

Petitioner asserts that trial counsel was ineffective for failing to call his then girlfriend, Martha Gail Taylor, as a defense witness. Doc. 2 at 24. According to Petitioner, Taylor's trial testimony would have bolstered the credibility of Petitioner's trial testimony and supported his defense theories. Id. at 27. Petitioner admits this claim is unexhausted and procedurally barred. Id. at 39. But he seeks to overcome this procedural default by relying on Martinez

20

v. Ryan, 566 U.S. 1 (2012), and arguing that he can show "cause" to excuse his default because he did not have counsel when he filed his Rule 3.850 motion. Doc. 2 at 39; Doc. 14 at 8-11.

Under Martinez, Petitioner must prove more than the general assertion that the trial court did not appoint counsel in the initial-review collateral proceeding. 566 U.S. at 14. Petitioner must "also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id. (citations omitted); see also Lambrix v. Sec'y Fla. Dept. of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017). Conversely, his claim is "insubstantial" if "it does not have any merit or . . . is wholly without factual support." Id. at 16. For the reasons that follow, the Court finds that even if Petitioner shows that his lack of postconviction counsel caused his procedural default, he cannot show that his underlying ineffective-assistance-of-counsel claim is substantial.

Following the state's case-in-chief and outside the presence of the jury, Petitioner advised the trial court he wished that trial counsel had subpoenaed Taylor to testify as a defense witness. Resp. Ex. 3 at 323-24. According to Petitioner, Taylor would have testified that before the altercation, the victim allowed Petitioner into his car and they left the gas station for a few minutes before coming back and asking Taylor to approach the car. Id. at 324. Trial counsel advised the trial court that he considered Petitioner's request to call

Taylor as a witness but believed it would not be beneficial to Petitioner's case because the state had also charged Taylor with the same offenses as Petitioner. Id. at 325. Trial counsel also stated that he advised Petitioner that he spoke with Taylor's attorney before trial who advised that Taylor's potential trial testimony would not favor Petitioner and the state would likely list Taylor as a state witness. Id. at 327. The state then addressed the trial court and corroborated trial counsel's statement, advising that it listed Taylor as a state witness, Taylor was actively cooperating with the state, and that Taylor's attorney felt it was in Taylor's best interest to not testify at Petitioner's trial based on what Taylor disclosed to the prosecutor during discovery. Id. at 328.

The record shows that trial counsel considered Petitioner's request to call Taylor as a defense witness but made a strategic decision not to call her. Thus, because this claim is insubstantial and lacks merit, Petitioner cannot rely on Martinez to excuse the procedural default of this claim. Likewise, Petitioner has failed to demonstrate that failure to consider this claim on the merits will result in a fundamental miscarriage of justice. Ground Two is due to be denied.

### C. Ground Three

Petitioner asserts that his trial counsel was ineffective for failing to move to suppress the recording of Moody's 911 call. Doc. 2 at 39-51. He argues that the recording was hearsay for which an exception did not apply. Id. at 43. Petitioner contends that the victim did not call 911 right after the incident, but

instead "watched [Petitioner] drive away, concluded [Petitioner] could not drive a stick shift, got off the ground, was approached by a man with a blade, thought he was going to be attacked, had a conversation, and then called 911." Id. at 44-45. He also maintains that the statement did not amount to an excited utterance. Id. at 54.

Petitioner admits this claim is unexhausted and procedurally barred, but he again relies on Martinez to overcome this procedural default. Doc. 2 at 52-53; Doc. 14 at 11-12. However, because this claim is insubstantial and without merit, Petitioner is not entitled to the relief he seeks. Even assuming trial counsel should have moved to exclude the 911 recording, the state still presented the trial testimony of Moody who detailed Petitioner's actions. Moody testified that Petitioner forced his way into Moody's vehicle, refused to get out when asked, attempted to rob Moody of his wallet, and ultimately stole Moody's vehicle after he hit Moody multiple times in the face and head. Petitioner also admitted to hitting Moody and taking his vehicle without permission. Based on this evidence, Petitioner cannot show that but for trial counsel's alleged error, the outcome of his trial would have been different. Because Petitioner cannot satisfy the prejudice prong of Strickland, he cannot rely on Martinez to excuse the procedural default of this claim. Likewise, Petitioner has failed to demonstrate that failure to consider this claim on the merits will result in a fundamental miscarriage of justice. Ground Three is due to be denied.

**D. Ground Four**

Petitioner argues that the cumulative effect of trial counsel's errors, as alleged in Grounds One through Three, deprived him of his rights under the Sixth and Fourteenth Amendments. Doc. 2 at 53-54. This claim is also unexhausted and procedurally barred. Id. at 55. Petitioner relies on Martinez to overcome this procedural default. But the Court finds this claim is insubstantial and without merit

"The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted). The Eleventh Circuit addresses "claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that [it] find[s] in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). Because the Court has determined that none of Petitioner's individual claims of error or prejudice have merit, Petitioner's cumulative error claim cannot stand. See United States v. Taylor, 417 F.3d 1176, 1182 (11th Cir. 2005) ("[There being] no error in any of the district court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's]

convictions is without merit."). This claim is insubstantial and lacks merit, and thus Petitioner cannot rely on <u>Martinez</u> to excuse the procedural default of this claim. Likewise, Petitioner has failed to demonstrate that failure to consider this claim on the merits will result in a fundamental miscarriage of justice. As such, Ground Four is due to be denied.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.     The Amended Petition (Doc. 2) is **DENIED** and this case is **DISMISSED with prejudice**.

2.     The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[6]

---

[6] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 18th day of August, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:   Raymond Williams, #115795
      counsel of record